**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:16cv631-FDW**

| | |
|---|---|
| **WALTER TIMOTHY GAUSE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )        **ORDER** |
| | ) |
| **FRANK L. PERRY,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

**THIS MATTER** is before the Court upon Petitioner's pro se Petition for Writ of Habeas

Corpus, 28 U.S.C. § 2254 (Doc. No. 9), as well as miscellaneous motions filed by Petitioner

(Doc. Nos. 20, 27, 34, 39, 41, 43, 44, 46). Also before the Court are Respondent's Motion for

Summary Judgment (Doc. No. 13) and Motion to Strike (Doc. No. 32).

**I.    FACTUAL AND PROCEDURAL HISTORY**

Petitioner is a prisoner of the State of North Carolina who, on February 20, 2014, was

convicted by a jury in Mecklenburg County Superior Court of robbery with a dangerous weapon,

assault with a deadly weapon inflicting serious injury, and conspiracy to commit robbery with a

dangerous weapon. State v. Gause, 772 S.E.2d 265, 2015 WL 1529828, at * 1-2 (N.C. Ct. App.)

(unpublished), cert. denied, 776 S.E.2d 858 (2015) (Mem). On February 21, 2014, the trial court

sentenced Petitioner to consecutive active sentences of 146–185 months imprisonment for

robbery with a dangerous weapon and conspiracy, and 59–80 months for assault with a deadly

weapon inflicting serious injury. Id. at *2.

Petitioner filed a direct appeal. The North Carolina Court of Appeals summarized the

factual and procedural history of Petitioner's case, as follows:

On 12 March 2007, the Red Ball Grocery in Charlotte was robbed. During the robbery, the robber grappled with the store owner over a gun, which discharged, injuring the owner and causing injury to the robber's hand. Following the robbery and shooting, police found a trail of blood droplets leading from the store to railroad tracks at the rear of the store. Along the trail of blood droplets, police found money with blood on it. At the end of the trail, officers found discarded clothing. The DNA extracted from the blood found inside of the store, in the parking lot, and on the money found in the parking lot, matched defendant's DNA profile.

The next day, police officers saw [defendant] nearby, matching the description of the robber, with an injured hand and in possession of a crack pipe. Defendant was taken to a hospital to have his hand treated. On 21 March 2007, defendant was arrested. On 9 April 2007, he was indicted for robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and conspiracy to commit robbery with a dangerous weapon.

In October of 2008, he was found incapable of proceeding to trial, and was committed to Broughton State Hospital from December of 2008 to January of 2009, at which time he was returned to the Mecklenburg County jail to await trial. On 25 September 2009, defendant was again found incapable of proceeding to trial. An evaluation of defendant's competency was attempted in February of 2011, but the examiner found that, because of defendant's behavior, an evaluation was impossible.

On 28 March 2012, nearly five years after his indictment, defendant, through counsel, filed a motion for a speedy trial. On 17 February 2014, the first day of trial, defendant filed a motion to dismiss the indictments based upon the trial court's failure to preserve evidence and upon a violation of defendant's right to a speedy trial.

That same day, the trial court ordered an examination of defendant to determine whether he was competent to stand trial. It also conducted a pre-trial hearing concerning the destruction of blood swabs and the clothing found by the railroad tracks. At that hearing, the lead detective for the case explained that he had spoken with someone in the District Attorney's office, and had been informed that, based upon defendant's lack of competence to stand trial, the case was "likely never going to trial[.]" The detective then submitted the clothing and blood to be destroyed. The trial court denied defendant's motion to dismiss based upon the destruction of the evidence and alleged speedy trial violation, and denied defendant's motion to suppress evidence.

The trial court then conducted a hearing on defendant's capacity to stand trial. Melissa Zhiss, a psychologist, evaluated defendant prior to trial. She noted that defendant was schizophrenic, but concluded that he was competent to stand trial. Based upon this testimony, the trial court also concluded that defendant was competent to stand trial.

Id. at *1-2.  On April 17, 2015, the North Carolina Court of Appeals denied Petitioner's appeal, in part, but vacated the trial court's order on restitution and remanded that issue to the trial court for hearings.  Id. at *7.  Petitioner filed a petition for discretionary review ("PDR") in the North Carolina Supreme Court, which was denied on September 24, 2015.  State v. Gause, 776 S.E.2d 858 (N.C. 2015) (Mem).

On May 11, 2016, Petitioner filed a pro se motion for appropriate relief ("MAR") (Resp't's Ex 13, Doc. No. 14-14) in Mecklenburg County Superior Court ("MAR court"), which he amended on May 28, 2016 (Resp't's Ex 14, Doc. No. 14-15).  Petitioner's amended MAR was denied on July 1, 2016.  (Order Den. Am. MAR, Resp't's Ex 15, Doc. No. 14-16).  Petitioner filed a pro se petition for writ of certiorari ("PWC") (Resp't's Ex 16, Doc. No. 14-17) in the North Carolina Court of Appeals, which was denied on August 8, 2016 (Order Den. PWC, Res't's Ex. 18, Doc. No. 14-19).

Petitioner filed an unsigned Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on August 23, 2016.  (Doc. No. 1.)  It was returned to Petitioner for signature, and he filed his signed Petition for Writ of Habeas Corpus on September 18, 2016 (Pet. 2, Doc. No. 9.)

On November 9, 2016, Respondent filed an Answer (Doc. No. 12), Motion for Summary Judgment (Doc. No. 13), and Supporting Brief (Doc. No. 14).  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was notified of his right to respond to the Motion for Summary Judgment.  (Doc. No. 15.)  Petitioner has since filed a Response (Doc. No. 22), four supplements to the Response (Doc. Nos. 26, 27, 28, 35), and otherwise inundated the Court with letters, motions, and other miscellaneous filings (Doc. Nos. 18-21, 23-25, 29-30, 34, 37-46), most of which merely repeat arguments and allegations made in previous filings.

On January 10, 2017, Respondent moved to strike one of Petitioner's filings, an affidavit signed by Petitioner's sister, Ramona Gause (Doc. No. 31). (Doc. No. 32.) Petitioner has responded. (Doc. No. 40.)

## II.     STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.  The Antiterrorism and Effective Death Penalty Act of 1996

Review of Petitioner's claims that were adjudicated on their merits by the state courts is limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000). Under that standard, this Court may grant habeas relief on claims of constitutional error only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by th[e United States Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." Williams, 529 U.S. at 405; Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407.). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## III.   DISCUSSION

### A. Respondent's Motion to Strike

On January 9, 2017, this Court received a letter affidavit, dated January 4, 2017, from Ramona Gause, Petitioner's sister. (R. Gause Aff., Doc. No. 31.) The affiant provides information regarding her attempts to obtain updates about her brother's case from his various attorneys prior to trial, as well as information regarding a discussion she had with her brother's appellate attorney.

Respondent moves to strike Ms. Gause's letter pursuant to the Supreme Court's holding in Cullen v. Pinholster, 563 U.S. 170, 181 (2011). (Mot. to Strike, Doc. No. 32.) In that case, the Court made clear that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Id.

Ms. Gause's affidavit was not signed until January 4, 2017, so it could not have been

before any state court that adjudicated Petitioner's claims on their merits. As such, this Court may not consider it when reviewing the claims raised in the instant habeas Petition, and Respondent's Motion to Strike shall be granted.[1]

### B. Speedy Trial Claim

Petitioner claims that the nearly seven-year delay between his indictment and trial violated his constitutional right to a speedy trial. (Pet. 8, Doc. No. 9.) The Sixth Amendment to the Constitution guarantees an accused the right to a speedy trial. U.S. Const. amend.VI. To establish a violation of that right, a defendant must show that "on balance, four separate factors weigh in his favor: 'whether the delay before trial was uncommonly long, whether the government or the defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.'" United States v. Thomas, 55 F.3d 144, 148–49 (4th Cir. 1995) (quoting Doggett v. United States, 505 U.S. 647, 651 (1992) (paraphrasing the four-factor test announced in Barker v. Wingo, 407 U.S. 514, 530 (1972))).

On February 17, 2014, defense counsel filed a motion to dismiss the charges, alleging a violation of Petitioner's right to a speedy trial and that pre-trial destruction of certain evidence irreparably prejudiced Petitioner's ability to defend against the charges. (R. on Appeal 17-21, Resp't's Ex. 6, Doc. No. 14-7.) The trial court held a pre-trial hearing on the motion (Trial Tr. Vol. I 3-62, Feb. 17, 2014, Resp't's Ex. 1, Doc. No. 14-2), a hearing on Petitioner's capacity to proceed (Trial Tr. Vol. II 108-20, Feb. 18, 2014, Resp't's Ex. 2, Doc. No. 14-3), and a post-sentencing hearing on the motion (Trial Tr. Vol. V 663-87, Feb. 21, 2014, Resp't's Ex. 5, Doc.

---

[1] The Court notes that the information provided by Ms. Gause is not material to either of the claims raised in the instant habeas Petition.

No. 14-6).  Relying on the record and the information provided during the hearings, the court

issued two lengthy orders containing extensive findings of fact; each order addressed one of the

two grounds raised in the motion to dismiss.

It should be noted that certain factors complicated the trial court's effort to compile an

accurate and complete record in this case.  Among those factors were:  1) Petitioner had four

different attorneys; 2) different prosecutors were assigned Petitioner's case over the years; 3)

different judges presided over the proceedings in Petitioner's case; 4) some motions and orders

were missing from the criminal case file maintained by the Mecklenburg County Clerk of

Superior Court; and 5) overall poor record-keeping.  Thus, there are time-related gaps in the trial

court's findings of fact, and several findings that clearly bear the wrong date.  Where possible,

this Court has identified those that are relevant in the instant Order.  Additionally, the Court is

mindful that a state court's findings of fact are presumed to be correct absent clear and

convincing evidence to the contrary.  See § 2254(e)(1).  Although Petitioner disputes a number

of the trial court's factual findings, he either has not offered clear and convincing evidence that

they are erroneous, or the findings he disputes are not material to his claim.

On direct appeal, Petitioner challenged only the trial court's rejection of his speedy trial

claim.  The North Carolina Court of Appeals applied the four Barker factors in adjudicating that

issue.  Therefore, it's rejection of the claim was not contrary to clearly established federal law.

See § 2254(d)(1); Williams v. Taylor, 529 U.S. at 405.  The questions that remain are whether

the state appellate court applied the four factors unreasonably to the facts in Petitioner's case, see

Williams, 529 U.S. at 407, or made an unreasonable determination of the facts in light of the

evidence before it, see § 2254(d)(2).

With respect to the first Barker factor, the U.S. Supreme Court has suggested that a full

review of a defendant's speedy trial rights should be conducted when a delay approaches one year. See Doggett, 505 U.S. at 651-52 & n.1. Additionally, the reviewing court must weigh "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 652. Petitioner was indicted on April 9, 2007, and his trial began on February 17, 2014. The North Carolina Court of Appeals held that this delay was "presumptively prejudicial" under the first Barker factor. See Gause, 772 S.E.2d. at *2.

"The second Barker factor, the reasons for the trial delay, is necessarily related to a proper assessment of the period of delay." United States v. Hall, 551 F.3d 257, 272 (4th Cir. 2009). Barker states that "different weights should be assigned" based upon the reason for the delay. See 407 U.S. at 531. When the delay may be attributed to misconduct or bad intent on the part of the prosecution, the second Barker factor should weigh more heavily in the defendant's favor. See id. More "neutral" reasons for the delay, such as "negligence" or "overcrowded courts," should be "weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. A valid reason for the delay – if a witness is missing, for example – "should serve to justify appropriate delay." See id.

In applying the second factor, the state appellate court found that the primary reason for the delay was Petitioner's incompetence to stand trial. See Gause, 772 S.E.2d. at *2. The court noted that Petitioner was represented by counsel, who filed more than one motion to have Petitioner evaluated for competency but never requested a competency hearing before the trial court. Id. at *3 ("[T]he burden is on the defendant to request a [competency] hearing, and failure to do so constitutes a waiver." (quoting State v. Leyshon, 710 S.E.2d 282, 290 (N.C. Ct. App. 2011) (internal quotation marks omitted))). The secondary reason for the delay, according to the

8

appellate court, was Petitioner's repeated conflicts with trial counsel.  See id. at *3.

Based upon the record before it, it would not have been unreasonable for the appellate court to conclude that the causes of the delay were valid, attributable to Petitioner, or more neutral.  According to the trial court's order denying Petitioner's motion to dismiss on speedy trial grounds (Order Den. Mot. to Dismiss, R. at 60-71), Petitioner's case was scheduled for a "first setting" the week of July 23, 2007, but was rescheduled at the request of the defense (R. at 61).  Between July 23, 2007, and February 24, 2010, the case was continued multiple times for the defense; defense counsel filed four motions for a forensic evaluation to determine Petitioner's competency to proceed, all of which were granted; on at least two occasions, defense counsel was unable to obtain a forensic evaluation for Petitioner before his scheduled trial dates, and the trial had to be continued; twice Petitioner was determined to be incompetent to proceed and was committed to Broughton Hospital[2] for evaluation and/or treatment; and for periods of time, Petitioner refused to take his mental health medications[3] while at the Mecklenburg County Jail.  The trial also was continued twice "for a global plea offer," when the parties discovered Petitioner had other, unrelated charges under an alias.  (R. 61-62.)  Although Petitioner was twice committed to Broughton, he did not receive a formal forensic evaluation there, and no formal finding of competency was made.  (R. at 62 ¶25, 63 ¶34.)

The trial court's order denying the motion to dismiss reflects no action of any sort on Petitioner's case from February 24, 2010, until December 7, 2010.  (R. at 60-63.)  On February 24, 2010, defense counsel filed an interim fee application stating that the prosecutor had

---

[2] Broughton Hospital is a psychiatric hospital operated by the North Carolina Department of Health and Human Services.  See https://www.ncdhhs.gov/divisions/doshf/broughton-hospital

[3] Petitioner was diagnosed with Schizophrenia as a teenager.  (R. at 61 ¶22.)

dismissed Petitioner's charges, with leave to reinstate them, and that Petitioner had been committed to Broughton. Whether the prosecutor actually filed the "dismissal with leave" is an open question, however, as the trial court made no findings of fact regarding the date of the dismissal or the date charges were reinstated. Nor did the trial court make findings with respect to whether Petitioner was in custody on these charges during that time or the charges he had incurred under his alias. Additionally, according to the trial court's order, Broughton Hospital returned Petitioner to the Mecklenburg County Jail without notifying the District Attorney's Office, defense counsel, or the Clerk of Superior Court, but the court made no findings regarding the date Petitioner was returned or when, and by whom, his return was discovered. (R. at 62-63.)

Moreover, Broughton apparently returned Petitioner without a finding regarding his competency. (R. at 63, ¶34.) Therefore, the last assessment of Petitioner's competency in the state trial record pre-dated his second Broughton admission and concluded he did not have the capacity to proceed at trial. (R. at 62, ¶28.) On December 7, 2010, defense counsel filed his fifth motion for appointment of a local forensic evaluator based upon Petitioner's return from Broughton without a formal opinion regarding his capacity to proceed. The motion was granted, but Petitioner refused to cooperate with the evaluator and no determination was made regarding his competency at that time. (R. at 63.)

The trial court's findings of fact indicate that in July 2011, either a determination was made that Petitioner was competent to stand trial or the issue of his competency simply was not raised before the court. The trial court found that in July 2011, Petitioner "had been stabilized" and appeared in court to enter a plea. (R. at 63 ¶28.) There is nothing more in the trial court's findings of fact regarding Petitioner's competency until trial started in February 2014.

Under the Due Process Clause, "[a] criminal defendant may not be tried unless he is

competent." Godinez v. Moran, 509 U.S. 389, 396 (1993) (citing Pate v. Robinson, 383 U.S. 375, 378 (1966)). Thus, appropriate delay due to a defendant's mental incompetence is justified. See e.g. Ricon v. Garrison, 517 F.2d 628, 632 and n.7 (4th Cir. 1975) ("[W]here the delay results from a concern by the trial court over the mental competency of the defendant to stand trial, the courts have been exceedingly reluctant to find constitutional infirmity even in very long delays." (internal quotation marks omitted)). Defense counsel filed his first motion for appointment of a forensic examiner on December 4, 2007, citing "concerning behavior" by Petitioner, and the motion was granted. (R. at 61 ¶16.) Therefore, it was not unreasonable for the North Carolina Court of Appeals to weigh the period between December 4, 2007, and July 2011, against Petitioner's speedy trial claim. During that time, Petitioner's capacity was in question; he was receiving treatment at Broughton Hospital, or he was assessed as incompetent to stand trial.[4] See Barker, 407 U.S. at 531. Furthermore, the state court reasonably could have attributed additional delay to Petitioner based upon defense requests for continuances.

Even if the 10 months of inaction in 2010 were weighed against the State, which is responsible for keeping track of its open cases and those in its custody, it would be reasonable to attribute that delay to negligence or mistake on the part of multiple actors, including defense counsel, rather than deliberate action on the part of the prosecution. Delay under those circumstances may reasonably be weighed less heavily than deliberate delay by either party. See Barker, 407 U.S. at 531.

---

[4] Alternatively, it would not have been unreasonable for the state appellate court to exclude the period between December 4, 2007, and July 2011, when calculating the length of the delay between Petitioner's indictment and trial. See e.g. Ricon, 517 F.2d at 632 (refusing to consider periods the defendant was either under observation to determine his competency or under treatment for mental disability in calculating the length of delay between indictment and trial).

Turning back to July 2011, the record shows that Petitioner changed his mind during his plea colloquy with the judge and rejected the plea agreement. The matter was continued for the defense. It appears that an "Expedited Pretrial Readiness Conference" was held on September 11, 2011, and trial was set for the week of November 28, 2011. The trial court made no finding regarding why trial was not held that week or when the matter was next scheduled. Petitioner sent an undated, hand-written letter to the Mecklenburg County Superior Court Judges' Office "in early December 2011," complaining about how long he had been incarcerated without a trial. Petitioner's letter was mailed to defense counsel on December 7, 2011. (R. at 63.)

On March 28, 2012, defense counsel filed a Motion for Speedy Trial and Peremptory Setting. Shortly thereafter, counsel was allowed to withdraw due to conflicts with Petitioner; new counsel was appointed, and a spring trial date was set. [5] Trial was not reached during that spring session. Trial was continued twice more in 2012 -- once because it was not reached during the scheduled criminal session, and once for the defense when Petitioner rejected a new plea offer that counsel had requested from the prosecutor. (R. at 63-64.)

---

[5] The trial court found that counsel was allowed to withdraw on March 4, 2012, new counsel was appointed on March 9, 2012, and trial was set for March 21, 2012. (R. at 63, ¶¶ 42-45.) It appears that the trial court inadvertently used the wrong month when it made these findings. If Petitioner's original defense counsel withdrew March 4, and was replaced on March 9, 2012, he would not have been able to file a motion on Petitioner's behalf on March 28, 2012. Furthermore, this Court takes judicial notice that March 4, 2012, was a Sunday, when state court is not regularly in session. Moreover, according to the post-hearing transcript on the motion to dismiss, Petitioner's trial was scheduled for the week of April 9, 2012, at which time Petitioner moved for appointment of new counsel, his original counsel was allowed to withdraw, and new counsel was appointed. (Trial Tr. Vol. V 667-68, February 21, 2014, Resp't's Ex. 5, Doc. No. 14-6.)

The Court also takes judicial notice that during the spring term of 2012, criminal sessions of Mecklenburg County Superior Court began on Mondays. See Superior Court Division VII -Spring Sessions 2012 Calendar, http://www.nccourts. org/Courts/CRS/Calendars/SCSessions/Archived.asp_spring2012–statewide.pdf. As a general rule, criminal trials in Mecklenburg County Superior Court were calendared on the first Monday of each session. March 21, 2012, fell on a Wednesday, so it is highly unlikely that trial was scheduled for that day. On the other hand, a criminal session was held in Mecklenburg County Superior Court the week beginning Monday, May 21, 2012. Based upon the foregoing, it is likely that Petitioner's trial was scheduled the week of April 9, 2012, but because he was appointed a new attorney, trial was continued until May 21, 2012.

There is a gap in the trial court's findings of fact for the period between December 7, 2012, when Petitioner rejected the plea, and August 5, 2013, when trial was scheduled but not reached.[6] Trial was rescheduled for the week of October 7, 2013, but was continued at the request of the defense. Petitioner successfully moved again to replace counsel due to conflict between them. Trial was set for the week of December 9, 2013. During that criminal session, however, his newest defense attorney was allowed to withdraw, because Petitioner was threatening to sue her. The court appointed Petitioner his fourth attorney in less than two years, and trial was continued for the defense until the week of February 17, 2014. (R. at 64.)

On February 17, 2014, Petitioner's case was called for trial, and counsel filed the motion to dismiss. After examining the files, the court concluded there had never been a formal finding by a qualified mental health examiner that Petitioner was competent to stand trial. On its own motion, the court ordered that a local forensic examination of Petitioner be completed prior to jury selection. (R. at 64.) On February 18, 2014, a licensed psychological associate and certified forensic screener conducted a competency examination and concluded that Petitioner was able to proceed to trial at that time. The trial court found Petitioner competent to stand trial, and the trial proceeded accordingly. (R. at 65.)

It was not unreasonable for the North Carolina Court of Appeals to attribute most of the delay after July 2011, to Petitioner. Although trial had to be continued on several occasions because it was "not reached" during the scheduled criminal session of court, in the absence of

---

[6] There is evidence in the record that trial was not reached because defense counsel was not available for trial. During the post-trial hearing, the prosecutor stated that trial was calendared for the "summer of 2013" but defense counsel was not available at that time and that counsel filed new motions for discovery around that time. (Trial Tr. Vol. V 668-69.) The record shows defense counsel filed motions for discovery and Brady material on July 31, 2013, five days before trial was scheduled. (Motions 23-37, Pet'r's Exs. 1 & 2, Doc. No. 22-1.)

evidence of bad faith or deliberate misconduct on the part of the prosecution in scheduling Petitioner's trial, this type of delay should be weighed less heavily than deliberate delay. See Barker, 407 U.S. at 531. Petitioner has not pointed to any evidence that the prosecution deliberately delayed scheduling his trial. Furthermore, there is nothing in the record indicating the prosecution ever sought to continue Petitioner's trial.

The court also found that the third Barker factor cut against Petitioner. See Gause, 772 S.E.2d. at *3. It cited Petitioner's failure to file a speedy trial motion until March 28, 2012, five years after his indictment, Petitioner's conflicts with his attorneys, which resulted in his having four different defense counsel in the two years after the motion was filed, and Petitioner's failure to move for a competency hearing. See id. Even including consideration of Petitioner's December 2011 letter to the Superior Court complaining about the length of time he had been in custody without trial, this Court cannot conclude that the state appellate court unreasonably weighed this factor against Petitioner given his role in extending the delay after he first raised the issue of his right to a speedy trial.

Finally, the appellate court found that Petitioner had failed to show he was prejudiced by the delay. See Gause, 772 S.E.2d. at *4. Petitioner argued the delay resulted in the destruction of evidence, in particular clothing, that might have contained evidence which could have exonerated him. In this instance, the fourth Barker factor required the appellate court to determine whether Petitioner was unable to adequately defend against the charges due to the delay. See United States v. MacDonald, 435 U.S. 850, 858 (1978). The court concluded Petitioner's argument was based on conjecture and that he had not met his burden of showing that independent testing of the evidence would have been material to his case. See id.

Evidence before the court showed that during the robbery at the Red Ball Grocery, one of

the suspects' hands was injured. Police collected blood evidence from the cash register counter in the store and from a cement curb and U.S. currency found outside the store. Following a trail of blood droplets from the store, police found discarded clothes along the railroad tracks at the rear of the store. The clothes were collected as evidence. See Gause, 772 S.E.2d. at *1. The clothes collected from the railroad tracks were a green and white hoodie, a pair of blue jeans, and a brown belt. The clothing had what was suspected to be blood on it. (R. at 66 ¶84.)

The next day, police saw Petitioner in the same neighborhood; he matched a general description given of one of the suspects, and he had an injured hand. He was arrested on other charges and taken to the hospital for treatment of his injury. Crime Scene Technicians collected several articles of clothing (Nike tennis shoes, a jacket, and a grey knit cap) and a DNA sample from Petitioner while he was at the hospital. A Charlotte-Mecklenburg Police Department ("CMPD") laboratory analyst performed a DNA analysis on the blood swabs taken from the counter and cement curb and compared them with Petitioner's DNA. The DNA from the swabs matched defendant's DNA profile. The probability of selecting an unrelated person at random who could be source of the DNA profile from the crime scene evidence was 1 in 35.2 trillion. The report was provided to Petitioner as part of discovery. None of the clothing collected at the crime scene or from Petitioner was tested for DNA or other evidence. (R. at 66-67.)

Under procedures in place at CMPD in 2009, detectives were sent annual or biannual requests for disposition of evidence in their cases. (Trial Tr. Vol. 1 76.) Lead investigators were asked to assess whether evidence in a case should continue to be stored and maintained by CMPD or could be destroyed. (Trial Tr. Vol. I 76.) Upon receiving such a request for disposition of property in Petitioner's case, the lead detective sought guidance from the District Attorney's Office in mid-December 2009. (Trial Tr. Vol. I 76.) The assistant district attorney in

charge of Petitioner's case at that time told the investigator that Petitioner had been found

incompetent to proceed and that it was unlikely the cases would go to trial. (Trial Tr. Vol. I 78,

90.) A determination was made then that the property could be destroyed. (Trial Tr. Vol. I 78.)

The detective submitted the property disposition sheet requesting destruction of most of the

physical evidence to his supervisor on December 30, 2009. (Trial Tr. Vol. I 78.) It was

approved on January 6, 2010, received and processed in the Property Control Division of CMPD

on January 7, 2010 (Trial Tr. Vol. I 78), and most of the physical evidence in Petitioner's case

was destroyed in February and March 2010 (R. at 68 ¶101). On February 24, 2010, defense

counsel submitted his interim fee application noting that the prosecutor had dismissed

Petitioner's charges, with leave to reinstate them and that Petitioner was a Broughton Hospital.

(R. at 68 ¶100). All of the physical evidence in Petitioner's case was destroyed except the U.S.

currency collected outside the store, the video recording of the robbery, and photographs of the

crime scene and evidence.

Petitioner has not presented any evidence that prosecutors or CMPD deliberately

destroyed evidence in order to impair his ability to defend against the charges. Nor has he

presented any evidence he was prejudiced by destruction of the evidence. It certainly is true that

defense counsel could have requested independent testing had the evidence not been destroyed.

Counsel, however, did not learn of its destruction until February 2014.[7] Petitioner's case had

---

[7] As in other instances, failure to notify defense counsel of the destruction of the evidence when it happened appears to be a function of poor record-keeping rather than bad intent. Nothing in the record indicates that the prosecutor who spoke with the investigator in 2009 made a notation about the conversation in the District Attorney's Office case file. Nor does it appear that anyone from CMPD notified either the District Attorney's Office or the Clerk of Superior Court's Office that the evidence had been destroyed. Evidence from the pre-trial hearing, on the other hand, shows that the prosecutors then-assigned to Petitioner's case learned for the first time that evidence had been destroyed when they began preparing for trial in February 2014, and notified defense counsel of that fact. (R. at 68 ¶¶ 103-104.)

been calendared for trial multiple times since July 2011. Nevertheless, none of Petitioner's

defense attorneys requested independent testing of the evidence prior to learning of its

destruction.[8]  Moreover, the blood on the U.S. currency was still available for testing.  In fact,

prosecutors had that blood tested after discovering that all of the other blood evidence had been

destroyed.  (Trial Tr. Vol. No. IV 535, Feb. 20, 2014, Resp't's Ex. 4, Doc. No. 14-5.)  The DNA

from the blood on the currency matched defendant's DNA profile.  (Trial Tr. Vol. No. IV 527.)

In short, the state appellate court reasonably concluded that destruction of the majority of the

evidence in this case did not prejudice Petitioner's ability to adequately defend against the

charges brought by the State.  See MacDonald, 435 U.S. at 858.

In weighing the four factors, the appellate court acknowledged that the exceptionally long

delay made the question a close one.  Id.  It concluded, however, that Petitioner's right to a

speedy trial was not violated.  Id.  Based upon the foregoing recitation of the evidence in this

case, this Court cannot hold that the North Carolina Court of Appeal's conclusion was based

upon an unreasonable application of clearly established federal law or an unreasonable

determination of the facts in light of the evidence.  See § 2254(d).  Therefore, Respondent is

entitled to summary judgment on this claim.

### C.  Destruction of Physical Evidence

Petitioner claims the trial court erred in denying his motion to dismiss based upon the

---

[8] Petitioner points out that defense counsel filed motions for discovery and disclosure of Brady evidence.  The discovery motion asked that the State be required to make the physical evidence *available* for examination, inspection, photographing, and/or independent testing.  (Discovery Motion 33-37, Pet'r's Ex. 2, Doc. No. 22-1.) There is nothing in the record indicating that defense counsel ever sought to actually examine the physical evidence or have it independently tested, however.  Likewise, counsel's stock request for disclosure of any and all exculpatory, material evidence in the State's possession, pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963) (Motion 23-32, Pet'r's Ex. 1, Doc. No. 22-1), did not constitute a request to examine or independently test specific evidence known to be in the State's possession.

pre-trial destruction of most of the physical evidence in his case. As noted previously, the

motion was filed on February 17, 2014; the trial court held a pre-trial hearing on the motion and

issued a detailed order denying it. (R. at 53-59.) Respondent asserts that Petitioner's claim is

procedurally defaulted on federal habeas review and must be dismissed.

Petitioner raised the substance of this claim in his MAR, primarily relying on Brady v.

Maryland, 373 U.S. 83, 87 (1963). In its order denying the MAR, the state court found that

Petitioner could have raised this claim on direct appeal, but did not. (Order Den. MAR, Resp't's

Ex. 15, Doc. No. 14-16.)

North Carolina law proscribes procedural grounds for denial of an MAR. See N.C. Gen.

Stat. § 15A-1419(a). Claims raised in an MAR that could have been raised on direct appeal, but

were not, are subject to dismissal under § 15A-1419(a)(3) (providing for dismissal if "[u]pon a

previous appeal the defendant was in a position to adequately raise the ground or issue

underlying the . . . motion but did not do so"). As a general rule, "a federal habeas court may not

review constitutional claims when a state court has declined to consider their merits on the basis

of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183

(4th Cir. 2000). The Fourth Circuit Court of Appeals has "consistently held that § 15A-

1419(a)(3) is an independent and adequate state ground for purposes of procedural default."

Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008). Thus, this claim is procedurally

defaulted here.

A federal habeas court will not review a claim that is procedurally defaulted absent a

showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice

will occur if the habeas court declines to review the claim. See Wright v. Angelone, 151 F.3d

151, 160 (4th Cir. 1998). Petitioner asserts that appellate counsel refused to raise this claim on

direct appeal. (Mot. to Excuse Proc. Bar, Doc. No. 26.) While ineffective assistance of appellate

counsel may serve as "cause" to excuse a procedural default, "the exhaustion doctrine . . .

generally requires that a claim of ineffective assistance be presented to the state courts as an

independent claim before it may be used to establish cause for a procedural default." Murray v.

Carrier, 477 U.S. 478, 488-89 (1986). Petitioner did not raise an independent claim of

ineffective assistance of appellate counsel in the state courts.

He does not assert "cause and prejudice" on any viable ground, and he has failed to put

forth a coherent argument that a fundamental miscarriage of justice will occur if the court refuses

to consider his claim. Therefore, this claim shall be dismissed as procedurally defaulted.

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is

   **DENIED and DISMISSED**;

2. Respondent's Motion to Strike (Doc. No. 32) is **GRANTED**;

3. Respondent's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**;

4. The Clerk of Court shall correct the docket to reflect that Petitioner's filings at Doc.

   No. 26 and Doc. No. 27 are supplemental responses to Respondent's motion for

   summary judgment;

5. Petitioner's miscellaneous motions (Doc Nos. 20, 34, 39, 41, 43, 44, 45, 46) are

   **DENIED**; and

6. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines

   to issue a certificate of appealability as Petitioner has not made a substantial showing

   of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell,

   537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: February 13, 2017

Frank D. Whitney
Chief United States District Judge